### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

| | |
|---|---|
| **TAMI FOWLER, DONNA WATSON,** and **ANABEL ORTEGA** individually and on behalf of all other similarly situated, | |
| Plaintiffs, | Case No.: |
| v. | Hon. |
| **FOCUS CARE, INC. d/b/a/ FEV TUTOR, INC.** | Mag. |
| Defendant. | |

### COLLECTIVE AND CLASS ACTION COMPLAINT

Plaintiffs Tami Fowler, Donna Watson, and Anabel Ortega ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, bring this Collective and Class Action Complaint against Defendant Focus Care, Inc. d/b/a FEV Tutor, Inc. (hereinafter "FEV Tutor" or "Defendant") and state as follows:

### PRELIMINARY STATEMENT

1.      This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiffs, individually and on behalf of all similarly situated persons employed by Defendant, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*; the South Carolina Payment of Wages Act, S.C. Code Ann. §§ 41-10-10, *et seq.* ("South Carolina Wage Act"); the North Carolina Wage and Hour Act, N.C. Gen. Stat. 95-25.1, *et seq.* ("North Carolina Wage Act"); the Massachusetts Minimum Fair Wages Act, M.G.L. Ch. 151, §1, *et seq.* ("Massachusetts Wage Act"); and the Massachusetts Timely Payment of Wages Act, M.G.L. Ch. 149 §148.

2.      According to Defendant's website, Defendant is an "online tutoring platform that provides live academic instruction and support to students 24/7."[1] Defendant's website claims to have supported 2 million students over 4 million sessions and with over 5 million hours of family outreach.[2]

3.      In order to provide these services, Defendant employs hourly (non-exempt) representatives and agents with a number of job titles, including but not limited to Customer Care Agent, Customer Care Advocate, Customer Care Specialist, Customer Care and Technical Solutions Team Member, Customer Representative, Processor, etc. (collectively referred to as "Agent" or "Agents").

4.      Regardless of the specific job title, all Agents are paid on an hourly basis, are classified as non-exempt employees, use the same timekeeping system(s), use many (if not all) the same computer programs, are subject to the same relevant timekeeping and attendance policies, and have the primary job duty of providing assistance to customers.

5.      The U.S. Department of Labor ("DOL") recognizes that call center jobs, like those held by the Agents, are homogenous. In July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses that are prevalent in the industry.[3]  One of those abuses, which is occurring in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday."[4]

6.      The DOL's Fact Sheet #64 specifically condemns an employer's non-payment of an employee's necessary pre-shift and post-shift activities: "An example of the first principal

---

[1] *See* https://www.fevtutor.com/ (last visited December 5, 2023).
[2] *Id.*
[3] DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), available at *https://www.dol.gov/agencies/whd/fact-sheets/64-flsa-call-centers.*
[4] *Id.*

activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications, and work-related emails."[5] Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept."[6]

7.      Defendant does not compensate its Agents, like Plaintiffs, for all work performed. Instead, Defendant requires its Agents to perform compensable work tasks before and after their scheduled shifts, and during their unpaid meal periods, when they are not logged into Defendant's timekeeping system. This corporate policy and practice results in Agents not being paid for all time worked.

8.      In particular, Defendant requires its Agents to begin work prior to their scheduled shifts and perform a number of off-the-clock tasks that are integral and indispensable to their jobs, including booting up computers, logging into numerous software programs, and logging into phones. The Agents only clock in and receive compensation *after* this pre-shift work is completed, though they are required to perform this work in order to be "Available" when their scheduled shifts begin.

9.      In addition to this pre-shift work, Defendant also requires its Agents to perform unpaid mid-shift work during their unpaid meal periods. The Agents' duties performed during their unpaid meal periods include similar, albeit abbreviated, login procedures.

10.      In addition to this pre-shift and meal period work, Defendant also requires its Agents to perform unpaid post-shift work following their scheduled shifts to include off-the-clock tasks such as making final notes regarding the last phone calls, catching up on e-mails and schedule

---

[5] *Id.*
[6] *Id.*

changes for the following day(s), and on occasion speaking to supervisors or managers about work-related topics or issues.

11.     Defendant, through its managers, has actual and constructive knowledge that its Agents are completing this off-the-clock work without compensation. Nevertheless, Defendant suffers and/or permits, and in fact, trains and requires, its Agents to complete this unpaid work.

12.     Defendant's practice of failing to compensate its Agents for all hours worked has violated the Agents' rights under the FLSA, as well as related state wage-and-hour laws.

13.     In this action, Plaintiffs seek to represent current and former Agents who are similarly situated to each other in terms of their positions, job duties, and Defendant's violations of law.

14.     Defendant knows or could have easily determined how long it takes its Agents to complete the pre-shift start-up/log-in process, meal period duties, and post-shift work, and could have properly compensated Plaintiffs and other Agents for the work that they performed, but did not.

15.     As a result of Defendant's willful failure to compensate Plaintiffs and all similarly situated employees for all work performed, Defendant has violated and continues to violate the FLSA, 29 U.S.C. §§201 *et seq*. Defendant's conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

16.     Plaintiffs bring this action for violation of the FLSA as a collective action, pursuant to Section 216(b) of the FLSA, on behalf of the following Collective:

> *All current and former hourly agents who worked for Defendant at any time during the past three years.*

17.     Defendant is liable for its failure to pay its Agents for all work performed.

18.     Agents who elect to participate in this FLSA collective action seek compensation

for all off-the-clock, pre-, mid-, and post-shift work performed for Defendant.

19.    Plaintiffs and all other similarly situated individuals are entitled to back pay, liquidated damages, interest, attorneys' fees and costs, and other relief as appropriate under the statute. 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

20.    This Court has subject-matter jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims raise a federal question under 29 U.S.C. § 201, et seq.

21.    Additionally, this Court has jurisdiction over Plaintiffs' collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

22.    Defendant's annual sales exceed $500,000 and it has more than two employees; thus, the FLSA applies in this case on an enterprise basis.  Defendant's Agents engage in interstate commerce.  Therefore, the Agents are also covered by the FLSA on an individual basis.

23.    This Court also has supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. §1367 because they originate from the same facts that form the basis of their federal claims.

24.    This Court has personal jurisdiction over Defendant because Defendant conducts business within the state of Massachusetts and is headquartered in the state of Massachusetts.

25.    Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b) and (c), because Defendant conducts business in this District, and because a substantial portion of the events that give rise to Plaintiff's claims occurred in this District.

26.     All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness, and convenience for the parties.

## INTRADISTRICT ASSIGNMENT

27.     A substantial part of the events or omissions which give rise to the claims occurred in Middlesex County, and therefore this action is properly assigned to the Eastern Division.

## PARTIES

28.     Plaintiff Tami Fowler is a resident of Beaufort, South Carolina. Ms. Fowler has worked for Defendant as an hourly remote Agent since approximately August 2022. Defendant compensates Plaintiff Fowler through the payment of an hourly rate, currently at $20.50 per hour. Plaintiff Fowler signed a consent to join this collective action lawsuit, ***Exhibit A***.

29.     Plaintiff Donna Watson is a resident of Lenoir, North Carolina. Ms. Watson worked for Defendant as an hourly remote Agent from approximately August 2022 to July 2023. Defendant compensated Plaintiff Watson though the payment of an hourly rate, most recently at $20 per hour. Plaintiff Watson signed a consent to join this collective action lawsuit, ***Exhibit B***.

30.     Plaintiff Anabel Ortega is a resident of Clinton, Massachusetts. Ms. Ortega worked for Defendant as an hourly remote Agent from approximately January 13, 2020 to September 22, 2023. Defendant compensated Plaintiff Ortega through the payment of an hourly rate, most recently at $17.00 per hour. Plaintiff Ortega signed a consent to join this collective action lawsuit, ***Exhibit C***.

31.     Additional putative Collective members were or are employed by Defendant as remote Agents in other states during the past three years and their consent forms will also be filed in this case.

32.     Defendant is a Massachusetts corporation with its headquarters and principal place of business located in Woburn, Massachusetts.

33.     Upon information and belief, Defendant has employed hundreds of Agents – including Plaintiffs – within the past three years and across the United States to assist its customers with their customer service needs.

## GENERAL ALLEGATIONS

34.     Defendant provides "online learning options to students at all times."[7] It connects students across the country with live academic support to deliver solutions to schools, districts, and families to stimulate academic growth.[8]

35.     Defendant has employed hundreds of Agents over the past three years at its call centers and remotely to handle consumer and customer phone calls concerning various issues.

36.     Defendant compensates its Agents on an hourly basis and classifies them as non-exempt employees under the FLSA.

37.     Throughout their employment with Defendant, Plaintiffs and other Agents were pressured and required to work substantial amounts of uncompensated, off-the-clock time as part of their job duties.

38.     Defendant pays its Agents at varying hourly rates.

39.     Defendant's Agents typically work five days each week and up to forty (40) or more hours per week.

40.     In order to perform their job duties, Plaintiffs and Defendant's Agents are required to use a computer and a variety of essential and indispensable computer programs,

---

[7] *See* https://www.fevtutor.com/about/ (last visited December 5, 2023).
[8] *Id.*

applications, and servers.

41.      Prior to being hired, Agents received an offer from Defendant that set forth the requirements of an Agent, the job duties, and the offered rate of pay.

42.      Upon information and belief, Defendant maintains documents that demonstrate the promised hourly wage for each Agent, including but not limited to, offer letters, paystubs, and/or other payroll records.

43.      Plaintiffs received such offers from Defendant to serve as Agents, and they accepted Defendant's offers with the understanding that their base wage rates, ranging from $17.00 to $20.50 per hour, would be paid as promised.

44.      Plaintiffs performed under the contracts by carrying out their job duties and responsibilities. More specifically, Plaintiffs would work with Defendant's customers to make tutoring schedule changes, advise clients, update rosters of students and educators, resolve customer complaints and escalations, and accept general calls into the company. These services were provided via inbound calls and Plaintiffs would utilize Defendant's applications and systems to track all events and customer service information. Plaintiffs additionally performed the required unpaid off-the-clock work explained below.

45.      Once hired, Defendant provided all Agents, like Plaintiffs, with training on how to carry out their day-to-day job duties, including how to load and log into their computer programs at the beginning of the day, and how to log out at the end of the day; how to track their time in Defendant's timekeeping system; attendance, schedule and call quality expectations; and Defendant's policies related to each topic. The training Defendant's Agents received was substantially, if not entirely, the same, and all Agents were subject to the same and/or substantially similar policies and quality assurance reviews.

8

46.     At the start of each workday, Plaintiffs and all other Agents were required to boot up and log into various computer networks, software programs, and applications, in order to access information necessary to perform their job functions. However, Plaintiffs and all other Agents were not actually "clocked in" for their shifts until after the computer boot-up and login process was complete or nearly complete and they place themselves in "Available" status.

47.     At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments, and employment conditions of Plaintiffs and all other Agents.

48.     Additionally, Defendant maintained schedule adherence and attendance metrics pursuant to which they monitored the Agents' clock-in times and "Available" hours. Defendant enforced these policies and procedures by routinely evaluating, and at times disciplining, Agents. This discipline included, but was not limited to, issuing write-ups, PIPs, final notices, and termination.

49.     Defendant instructed Plaintiffs and other similarly situated Agents to be in "Available" status the moment their scheduled shift started. This required Defendant's Agents to be logged in and have loaded all of their essential work-related computer programs and applications prior to the start of their shift so they could be prepared to take calls the moment their shift began. During the boot-up and login process, Defendant's Agents often experienced technical difficulties, increasing the amount of off-the-clock work they performed that day.

50.     All of Defendant's Agents used the same or similar computer networks, software programs, and applications in the course of performing their job responsibilities. These programs and applications were an integral and important part of the Agents' work and they could not perform their jobs without them.

51.     The pre-shift off-the-clock time Plaintiffs and all other Agents spent booting up and logging into their computers directly benefited Defendant and was integral and indispensable to the Agents' job responsibilities.

52.     Defendant's Agents also performed off-the-clock work when leaving and returning from meal periods, for example undergoing some or all of the computer boot-up process mentioned above, and when they experience technical difficulties.

53.     Defendant's Agents also performed off-the-clock work after clocking out from their scheduled shifts. This work could include finishing client phone calls, making notes regarding client phone calls, checking their schedules for the next day(s) as there were often changes, and accepting phone calls or receiving other communications from supervisors or management.

54.     Despite knowing that Plaintiffs and all other Agents performed this pre-, mid-, and post-shift work, Defendant and its managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

55.     Defendant possesses, controls, and/or has access to information and electronic data indicating the times Plaintiffs and all other Agents boot up and log into their computers each day, along with the time they log into their telephone systems.

56.     Upon information and belief, Defendant also possesses, controls, and/or has access to information and electronic data indicating when Plaintiffs and all other Agents experienced downtime due to technical issues.

57.     Because Defendant requires its Agents to perform pre-, mid-, and post-shift work off-the-clock, the hours tracked in Defendant's timekeeping system are inaccurate representations of the total amount of time Agents spent working for Defendant. Thus, the hours reflected on the Agents' paystubs are also inaccurate representations of the hours they worked.

58.     Despite its ability to track the amount of time Plaintiffs and other Agents spent in connection with the pre-, mid- and post-shift boot-up and login process and technical downtime, Defendant failed to pay Plaintiffs and other Agents for the off-the-clock work they performed each shift, thus breaching its contracts with its Agents.

59.     During the weeks that Agents did not work over forty (40) hours in a workweek, the outcome of Defendant's policies and practices is a deprivation of straight-time wages, in breach of Defendant's contracts with its Agents.

60.     Plaintiffs, and similarly situated Agents, also regularly worked overtime and non-overtime hours for which they were not paid the appropriate overtime rates, in breach of Defendant's contracts with its Agents.

A.  **Pre-Shift Off-the-Clock Work**

61.     Pursuant to Defendant's policies, training, and direction, Plaintiffs and all other Agents were required to perform daily off-the-clock tasks such as turning on or warming-up their computer; waiting for the computer to turn on; logging into the VPN using their username and password; and then starting up and logging into various secure, computer networks and software programs/applications, such as FreshDesk, GoTo, GoogleDrive, Slack, SalesForce, Caspio, etc. to access information.

62.     Defendant used its attendance/schedule adherence policies to pressure its Agents into arriving early and working off-the-clock so they could be "Available" at the start of their shifts.

63.     Plaintiffs and all other Agents were required to boot up and log into various computer networks, software programs, and applications, in order to access information necessary to perform their job functions. However, Plaintiffs and all other Agents were not actually "clocked

in" for their shifts until *after* the computer boot-up and login process was complete or nearly complete and they placed themselves in "Available" status.

64.    The pre-shift boot-up and login process generally consisted of the following steps:

a.    The Agents turned on their computer;

b.    After waiting for the computer to boot up, the Agents were prompted to log in to Windows using their username and password;

c.    Frequently, Agents were then prompted to complete a computer update;

d.    Upon turning on their computer and logging into Windows and completing any required updates, the Agents then had to use two-factor authentication to connect to Defendant's GoogleDrive and SalesForce (or Go2Connect) software;

e.    After the Agents connected to Defendant's GoogleDrive, they could access the daily schedule in an Excel document and "Spec Sheets" necessary for reference during many phone calls;

f.    The Agents would open Slack, Defendant's chat messenger, used for catching up on updates from the day before;

g.    The Agents would open Caspio, Defendant's student database;

h.    The Agents would open Microsoft OneNote or similar software to document the calls they would be accepting and to make notes;

i.    Finally, Agents would open SalesForce, Defendant's phone system, and wait until the exact minute their shift was scheduled to start, to mark themselves "Available";

j.    Prior to Defendant's use of SalesForce, some Agents used YourTurn or Paylocity timekeeping software as well.

65.    The above tasks took between ten (10) to twenty (20) minutes per day, and even longer when Defendant's computer networks and programs were not working properly.

66.    The Agents frequently encountered technical problems while performing this boot-up and login process, which often caused the process to take longer than 20 minutes.

67.    Defendant's Agents did not actually clock in for their shifts until the start of their scheduled shifts, meaning that Plaintiffs and all other Agents worked off-the-clock for at least ten (10) to twenty (20) minutes (or more) before each shift for which they were never compensated.

68.    If Agents started logging in immediately prior to their scheduled shifts, they were in danger of clocking in late because they could not complete the required pre-shift work necessary to be "Available" when their scheduled shifts began and it was time to clock in, and they would therefore receive a tardy on their records and poor schedule adherence scores.

69.    To the extent Defendant allowed its Agents to clock in a certain amount of time before the start of their shifts (*e.g.*, up to 5 minutes) to allow for the boot-up and login process, this grace period was exceeded by the amount of time it *actually* took Agents to complete the process.

70.    Because Defendant's Agents typically worked scheduled shifts of at least 40 hours per week, their required pre-shift work was nearly always overtime work, compensable at 1.5 times their regular rate of pay.

71.    Defendant had actual and constructive knowledge that its Agents began the pre-shift boot-up and login process while off-the-clock in order to make sure they were "Available" and clocked in on time.

72.    Defendant also had actual and constructive knowledge that its Agents frequently experienced technical problems with their computers or phones during the boot-up and login process.

73.    Defendant's policies and practices discouraged its Agents from recording all time worked.

74.    The unpaid off-the-clock work performed prior to each shift by Plaintiffs and other Agents was compensable, directly benefited Defendant, and the tasks undertaken in

connection with the off-the-clock work were integral and indispensable to their job duties and responsibilities as Agents.

**B.  Meal-Period Off-the-Clock Work**

75.    Defendant provided its Agents with a scheduled thirty (30) minute unpaid meal period during each work shift.

76.    Under federal law, in order for a meal period to be unpaid time, an employee must be completely relieved of his or her employment duties for the entire meal period. 29 C.F.R. § 785.19(a) states:

> **Bona fide meal periods.** Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be <u>completely relieved</u> from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

77.    According to the U.S. Department of Labor, "[r]est periods of short duration, usually 20 minutes or less, are common in the industry (and promote employee efficiency), and must be counted as hours worked.  Bona fide meal periods (typically 30 minutes or more) generally need not be compensated as work time as long as the employee is relieved from duty for the purpose of eating a regular meal."[9]

78.    However, Defendant also required Plaintiffs and all other Agents to perform off-the-clock work during these unpaid meal periods, including clocking out and spending approximately two (2) to three (3) minutes logging off and then returning from the 30-minute meal period approximately five (5) to ten (10) minutes early in order to have enough time to log back

---

[9] DOL Fact Sheet #64. *Supra* at Fn. 3.

in prior to resuming their shifts. This process was similar to the pre-shift login process described above (albeit abbreviated), and this time went uncompensated.

79.    Because Defendant's Agents typically worked scheduled shifts of at least 40 hours per week, their required mid-shift work was nearly always overtime work, compensable at 1.5 times their regular rate of pay.

80.    Defendant had actual and constructive knowledge that its Agents took unpaid meal periods and that its Agents performed mid-shift off-the-clock work during those unpaid meal periods in order to make sure they were clocked in and in "Available" on time for their shifts to resume.

81.    The unpaid off-the-clock work Plaintiffs and other Agents performed during their meal periods and prior to clocking back into Defendant's timekeeping system was compensable, directly benefited Defendant, and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to their job duties and responsibilities as Agents.

### C. Post-Shift Off-the-Clock Work

82.    Defendant trained, instructed, and required Agents to clock out the moment they finished fielding their last call of the shift. This pressured and required Defendant's Agents, including Plaintiffs, to also perform off-the-clock work at the end of their scheduled shifts when they logged out of the programs and applications and shut-down or restarted their computer.

83.    To meet job requirements, Agents also frequently had to perform additional "catchall work" including returning customer calls, reading and responding to e-mails, and fielding communications from supervisors/managers after they were clocked out at the end of their scheduled shifts.

84.     This resulted in Plaintiffs and other Agents performing an additional five (5) to ten (10) minutes every shift, and on occasion much more time.

85.     The post-shift off-the-clock work Plaintiffs and other Agents performed was compensable, directly benefitted Defendant, and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to their job duties and responsibilities.

**D. Technical Down Time**

86.     Additionally, in the course of performing their jobs, Plaintiffs and other Agents regularly experienced technical problems with their computer systems, which logged them out of the timekeeping systems and caused them to redo some or all of the boot up process.

87.     In these situations, the Agents could spend up to thirty (30) minutes or longer working with Defendant's technical team to resolve the problem(s).

88.     Defendant did not compensate Plaintiffs and other Agents for technical downtime.

89.     Defendant was aware of the time Agents spent experiencing technical difficulties and working with Defendant's technical team to resolve these difficulties, and Defendant could have paid Agents for this time, but did not.

**E. The Off-the-Clock Work Results in Viable "Gap Time" Claims**

90.     "Gap time" claims are those "in which an employee has not worked 40 hours in a given week but seeks recovery of unpaid time worked, or in which an employee has worked over 40 hours in a given week but seeks recovery for unpaid work under 40 hours." *Kinkead v. Humana at Home, Inc.*, 450 F.Supp.3d 162, 182 (D. Conn. Mar. 31, 2020); *Conner v. Cleveland Cty.*, *N.C.*, 22 F.4th 412, 426 (4th Cir. 2022) ("we hold that overtime gap time claims are cognizable under the FLSA).

91.    Plaintiffs, and similarly situated Agents, regularly worked non-overtime hours (i.e. "gap time") for which they were not paid.

92.    During the weeks that Agents did not work over forty (40) hours in a workweek, the outcome of Defendant's policies and practices was a deprivation of straight-time wages, in breach of Defendant's contracts with its Agents.

**F.  Defendant Benefitted from the Agents' Off-the-Clock Work**

93.    At all relevant times, Defendant has required and directly benefitted from the off-the-clock work performed by Plaintiffs and all other Agents in connection with the pre-, mid-, and post-shift activities described above.

94.    At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments, and employment conditions of Plaintiffs and all other Agents.

95.    At all relevant times, Defendant has been able to track the amount of time Plaintiffs and all other Agents spend in connection with the pre-, mid-, and post-shift activities. Defendant, however, has failed to do so and has failed to compensate Plaintiffs and all other Agents for the off-the-clock work they performed.

96.    At all relevant times, Plaintiffs and all other Agents have been non-exempt hourly employees, subject to the requirements of the FLSA.

97.    At all relevant times, Defendant used its attendance and adherence policies against Plaintiffs and the Agents in order to pressure them into performing pre-, mid-, and post-shift work off-the-clock.

98.    Defendant trained, instructed, and required Plaintiffs and all other Agents to perform these off-the-clock work activities when they were not clocked into Defendant's timekeeping system.

99.     Defendant instructed Agents to have all work applications and systems fully loaded before the start of their shifts, which takes them in the range of ten (10) to twenty (20) minutes per day, but Defendant prohibited Agents from clocking into the timekeeping software and marking themselves as "Available" before the start of the scheduled shift while simultaneously requiring the Agents to be phone/training ready the moment their shifts begin.

100.    Defendant similarly instructed its Agents to have all work applications and systems fully loaded the moment their meal periods concluded so they could be prepared to field calls.

101.    Defendant's adherence policies also forced its Agents to clock out exactly at the end of their shift or upon closing their final call, such that calls beyond their scheduled shift, making notes regarding those calls, checking and responding to pressing emails, and fielding communications from Defendant's supervisor or manager employees was work performed off-the-clock.

102.    At all relevant times, Defendant's policies and practices deprived Plaintiffs and the Agents of wages owed for the pre-, mid-, and post-shift activities they performed.

103.    During the weeks that Agents worked over forty (40) hours in a workweek, the outcome of Defendant's policies and practices was a deprivation of overtime wages, which are compensable under the FLSA.

104.    Defendant is in possession of the payroll and timekeeping records that will illustrate exactly which weeks Plaintiffs worked over forty (40) hours and exactly which weeks they worked under forty (40) hours.

105.    Defendant has known or should have known that the time spent by Plaintiffs and other Agents in connection with the pre-, mid-, and post-shift activities was compensable under

the law.  Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that they acted in good faith by not compensating the Agents for the time at issue in this action.

106.    Unpaid wages related to the off-the-clock work described herein are owed to Plaintiffs and the Agents at the FLSA-mandated overtime premium of one and one-half their regular hourly rate because they worked in excess of forty (40) hours in a workweek.

## FLSA COLLECTIVE ACTION ALLEGATIONS

107.    Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of themselves and on behalf of:

> *All current and former hourly agents who worked for Defendant at any time during the past three years.*

(hereinafter referred to as the "FLSA Collective"). Plaintiffs reserve the right to amend this definition if necessary.

108.    Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and the members of the FLSA Collective.

109.    Excluded from the proposed FLSA Collective are Defendant's executives, administrative, and professional employees, including computer professionals and outside sales persons.

110.    Resolution of this action requires inquiry into common facts.

111.    Consistent with Defendant's policies and practice, Plaintiffs and the members of the FLSA Collective were not paid for all work performed.

112.    All of the work Plaintiffs and the members of the FLSA Collective performed was assigned by Defendant, and/or Defendant was aware of all of the work they performed.

113.    As part of its regular business practice, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

   a.    Willfully failing to pay its employees, including Plaintiffs and the members of the FLSA Collective, for other off-the-clock work, such as technical downtime time; the pre- mid-, and post- shift boot-up and shut-down processes;

   b.    Willfully failing to record all of the time that its employees, including Plaintiffs and the members of the FLSA Collective, have worked for the benefit of Defendant; and

   c.    Willfully failing to pay its employees, including Plaintiffs and the members of the FLSA Collective, for all premium overtime wages for hours that they worked off-the-clock in excess of forty (40) hours per workweek.

114.    Defendant is aware, or should have been aware, that federal law requires them to pay Plaintiffs and the proposed FLSA Collective members an appropriate overtime premium for all hours worked in excess of forty (40) per workweek.

115.    Defendant's unlawful conduct has been widespread, repeated, and consistent.

116.    Upon information and belief, Defendant utilized a centralized payroll system that calculated overtime pay for all similarly situated employees in the same or similar manner.

117.    A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiffs bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policies, or plans; and (d) their claims are based upon the same factual and legal theories.

118.     The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues – the amount of uncompensated pre-, mid-, and post-shift off-the-clock work, the amount of technical downtime owed to each employee – does not vary substantially among the proposed FLSA Collective members.

119.     There are many similarly situated current and former Agents who have been underpaid in violation of the FLSA. They would benefit from the issuance of a court-authorized notice of this lawsuit and the opportunity to join.

120.     These similarly situated individuals are known to the Defendant, are readily identifiable, and can be located through Defendant's payroll records, which Defendant is required to maintain pursuant to the FLSA. 29 U.S.C. § 211(c); 29 C.F.R. § 516 *et seq*.

121.     Conditional certification of this case as a collective action pursuant to 29 U.S.C. § 216 (b) is proper and necessary so that these employees may be readily notified of this action through direct U.S. mail and/or other means including email and allowed to opt in for the purpose of collectively adjudicating their claims for unpaid wages, unpaid overtime compensation, liquidated damages and/or interest, and attorneys' fees and costs under the FLSA.

122.     All of the estimations discussed herein will be refined after representative discovery is completed.

### RULE 23 SOUTH CAROLINA CLASS ACTION ALLEGATIONS

123.     Plaintiff, Tami Fowler, brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of the following putative Class ("Rule 23 South Carolina Class"). The Rule 23 South Carolina Class is defined as follows:

> *All current and former hourly Agents who worked for Defendant in South Carolina at any time during the applicable statutory period.*

124.    On information and belief, the number of members of the Rule 23 South Carolina Class is so numerous that joinder would be impracticable.

125.    There is a well-defined community of interest among the members of the Rule 23 South Carolina Class and common questions of both law and fact predominate in the action over any questions affecting individual members. The common legal and factual questions include, but are not limited to, the following:

a.    Whether the off-the-clock time worked by the Rule 23 South Carolina Class members in connection with the activities described in this Complaint is compensable time;

b.    Whether the Rule 23 South Carolina Class members are owed wages for off-the-clock time worked in connection with the activities described in this Complaint;

c.    Whether Defendant engaged in a policy or practice of failing to pay each Rule 23 South Carolina Class member regular wages or minimum wages for each non-overtime hour worked;

d.    Whether Defendant engaged in a policy or practice of failing to pay each Rule 23 South Carolina Class member overtime compensation for each overtime hour worked; and

e.    Whether Defendant should be required to pay compensatory damages, attorneys' fees, penalties, costs, and interest for violating the state laws and wage acts applicable to the members of the Rule 23 South Carolina Class.

126.    Plaintiff Fowler's claims are typical of claims of the Rule 23 South Carolina Class she seeks to represent in that Plaintiff Fowler and other putative Class members suffered damages as a direct and proximate result of Defendant's common and systematic payroll policies and practices.  Plaintiff's claims and those of the members of the Rule 23 South Carolina Class arise from Defendant's similar policies, practices, and course of conduct and their legal theories are based on the same or similar facts.

127.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because, *inter alia*, it is economically infeasible for the Rule 23 South Carolina Class members to prosecute individual actions of their own given the amount of damages at stake for each individual along with the fear of reprisal by their employer.

128.     This case will be manageable as a Rule 23 Class action. Plaintiff Fowler and her counsel are not aware of any unusual difficulties in this case and Defendant and its corporate client have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

129.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v, Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action.").

130.     Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 South Carolina Class and declaratory relief is appropriate with respect to the Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## RULE 23 NORTH CAROLINA CLASS ALLEGATIONS

131.     Plaintiff, Donna Watson, brings this action pursuant to Red. R. Civ. P. 23(b)(2) and (b)(3) on behalf of the following putative Class ("Rule 23 North Carolina Class"). The Rule 23 North Carolina Class is defined as follows:

> *All current and former hourly Agents who worked for Defendant in North Carolina at any time during the applicable statutory period.*

132.     On information and belief, the number of members in the Rule 23 North Carolina Class is so numerous that joinder of them would be impracticable.

133.    There is a well-defined community of interest among the members of the Rule 23 North Carolina Class and common questions of both law and fact predominate in the action over any questions affecting individual members. The common legal and factual questions include, but are not limited to, the following:

      a.      Whether the off-the-clock time worked by the Rule 23 North Carolina Class members in connection with the activities described in this Complaint is compensable time;

      b.      Whether the Rule 23 North Carolina Class members are owed wages for off-the-clock time worked in connection with the activities described in this Complaint;

      c.      Whether Defendant engaged in a policy or practice of failing to pay each Rule 23 North Carolina Class member regular wages or minimum wages for each non-overtime hour worked;

      d.      Whether Defendant engaged in a policy or practice of failing to pay each Rule 23 North Carolina Class member overtime compensation for each overtime hour worked; and

      e.      Whether Defendant should be required to pay compensatory damages, attorneys' fees, penalties, costs, and interest for violating the state laws and wage acts applicable to the members of the Rule 23 North Carolina Class.

134.    Plaintiff Watson's claims are typical of claims of the Rule 23 North Carolina Class she seeks to represent in Plaintiff Watson and other putative Class members suffered damages as a direct and proximate result of Defendant's common and systematic payroll policies and practices.  Plaintiff's claims and those of the members Rule 23 North Carolina Class arise from Defendant's similar policies, practices, and course of conduct and their legal theories are based on the same or similar facts.

135.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because, *inter alia*, it is economically infeasible for the Rule 23

North Carolina Class members to prosecute individual actions of their own given the amount of damages at stake for each individual along with the fear of reprisal by their employer.

136.    This case will be manageable as a Rule 23 Class action. Plaintiff Watson and her counsel are not aware of any unusual difficulties in this case and Defendant and its corporate client have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

137.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A, v, Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action.").

138.    Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 North Carolina Class and declaratory relief is appropriate with respect to the Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## RULE 23 MASSACHUSETTS CLASS ALLEGATIONS

139.    Plaintiff, Anabel Ortega, brings this action pursuant to Red. R. Civ. P. 23(b)(2) and (b)(3) on behalf of the following putative Class ("Rule 23 Massachusetts Class"). The Rule 23 Class is defined as follows:

> *All current and former hourly Agents who worked for Defendant in Massachusetts at any time during the applicable statutory period.*

140.    On information and belief, the number of members in the Rule 23 Massachusetts Class is so numerous that joinder of them in the case would be impracticable.

141.    There is a well-defined community of interest among the members of the Ruel 23 Massachusetts Class and common questions of both law and fact predominate in the action over

any questions affecting individual members. The common legal and factual questions include, but are not limited to, the following:

a. Whether the off-the-clock time worked by the Rule 23 Massachusetts Class members in connection with the activities described in this Complaint is compensable time;

b. Whether the Rule 23 Massachusetts Class members are owed wages for off-the-clock time worked in connection with the activities described in this Complaint;

c. Whether Defendant engaged in a policy or practice of failing to pay each Rule 23 Massachusetts Class member regular wages or minimum wages for each non-overtime hour worked;

d. Whether Defendant engaged in a policy or practice of failing to pay each Rule 23 Massachusetts Class member overtime compensation for each overtime hour worked; and

e. Whether Defendant should be required to pay compensatory damages, attorneys' fees, penalties, costs, and interest for violating the state laws and wage acts applicable to the members of the Rule 23 Massachusetts Class.

142.    Plaintiff Ortega's claims are typical of claims of the Rule 23 Massachusetts Class she seeks to represent in that Plaintiff Ortega and other putative Class members suffered damages as a direct and proximate result of Defendant's common and systematic payroll policies and practices.  Plaintiff's claims and those of the Rule 23 Massachusetts Class arise from Defendant's similar policies, practices, and course of conduct and their legal theories are based on the same or similar facts.

143.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because, *inter alia*, it is economically infeasible for the Rule 23 Massachusetts Class members to prosecute individual actions of their own given the amount of damages at stake for each individual along with the fear of reprisal by their employer.

144.    This case will be manageable as a Rule 23 Class action.  Plaintiff Ortega and her counsel are not aware of any unusual difficulties in this case and Defendant and its corporate client have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

145.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v, Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action.").

146.    Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Massachusetts Class and declaratory relief is appropriate with respect to the Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## RULE 23 NATIONWIDE CLASS ALLEGATIONS

147.    Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of themselves and on behalf of:

> *All current and former hourly Agents who worked for Defendant at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Nationwide Class").  Plaintiffs reserve the right to amend this definition if necessary.

148.    The number of members of the Rule 23 Nationwide Class is so numerous that joinder of them would be impractical.  Plaintiffs reasonably estimate there are hundreds of Rule 23 Nationwide Class members.  Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

149.    There is a well-defined community of interests among the members of Rule 23 Nationwide Class and common questions of law and fact predominate in this action over any

questions affecting individual members of the Rule 23 Nationwide Class.  These common legal and factual questions, include, but are not limited to, the following:

a.  Whether the pre-shift time Rule 23 Nationwide Class members spend on startup and login activities each session is compensable;

b.  Whether the mid-shift time Rule 23 Nationwide Class members spend rebooting Defendant's programs, applications, and networks during their unpaid lunch breaks before they return from their breaks is compensable;

c.  Whether the post-shift time Rule 23 Nationwide Class members spend finishing taking and notating calls and/or receiving communications from supervisors and management is compensable;

d.  Whether the technical downtime Rule 23 Nationwide Class members spend troubleshooting is compensable;

e.  Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract; and

f.  Whether Defendant's non-payment of wages for all compensable time resulted in an unjust enrichment to Defendant.

150.    Plaintiffs' claims are typical of those of the Rule 23 Nationwide Class in that they and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.  Plaintiffs' claims and those of the Rule 23 Nationwide Class arise from the same pay policies, practices, promises and course of conduct and their legal theories are based on the same legal theories.

151.    Plaintiffs will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiffs retained counsel who are qualified and experienced in the prosecution of wage and hour class actions.  Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

152.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23

Nationwide Class members to prosecute individual actions of their own given the amount of damages at stake for each individual along with the fear of reprisal by their employer.

153.    This case will be manageable as a Rule 23 Class action. Plaintiffs and their counsel are not aware of any unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

154.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

155.    Because Defendant has acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I
## VIOLATION OF THE FAIR LABOR STANDARDS ACT,
## 29 U.S.C. § 201, *et seq.* -- FAILURE TO PAY OVERTIME

156.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

157.    At all times relevant to this action, Defendant has been subject to the mandates of the FLSA, 29 U.S.C. § 201, et seq.

158.    At all times relevant to this action, Defendant has been engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

159.    At all times relevant to this action, Plaintiffs were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

160.    Plaintiffs and other FLSA Collective members, by virtue of their job duties and activities actually performed, are all non-exempt employees.

161.    Plaintiffs and the other FLSA Collective members were either: (1) engaged in commerce; (2) engaged in the production of goods for commerce; and/or (3) employed in an enterprise engaged in commerce or in the production of goods for commerce.

162.    At all times relevant to this action, Defendant "suffered or permitted" Plaintiffs and the other FLSA Collective members to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

163.    At all relevant times, Defendant had a policy and practice of willfully refusing to pay Plaintiffs and the other FLSA Collective members the legally required amount of overtime compensation at the appropriate overtime rates for all hours worked in excess of 40 hours per workweek, in violation of the FLSA.

164.    At all times relevant to this action, Defendant required Plaintiffs and the other FLSA Collective members to perform no less than twenty (20) minutes and as much as forty (40) minutes of off-the-clock work per shift, but failed to pay these employees the federally mandated overtime compensation for all services performed.

165.    The off-the-clock work performed every shift by Plaintiffs and the other FLSA Collective members is an essential part of their jobs and these activities and the time associated with these activities is not *de minimis*.

166.    In workweeks where Plaintiffs and the  other FLSA Collective members worked forty (40) hours or more, the uncompensated off-the-clock work time, and all other overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly

wage, including shift differential and non-discretionary bonuses where applicable. 29 U.S.C. § 207.

167.    Defendant's violations of the FLSA have been knowing and willful.  Defendant has known or could have determined how long it takes Plaintiffs and the other  FLSA Collective members to perform their pre-, mid-, and post-shift off-the-clock work.  Further, Defendant could have easily accounted for and properly compensated Plaintiffs and the other FLSA Collective members for these work activities, but did not.

168.    As a result of Defendant's willful failure to compensate Plaintiffs and the other FLSA Collective members at a rate not less than 1.5 times the regular rate of pay for work performed in excess of forty (40) hours in a workweek, Defendant violated and continues to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including but not limited to 29 U.S.C. §§ 207(a)(1), 215(a), and 29 C.F.R. §§ 778.104.  Defendant's conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

169.    Plaintiffs and the other FLSA Collective members are entitled to back pay, liquidated damages, interest, attorneys' fees and costs, and other relief as appropriate under the statute.  29 U.S.C. § 216(b).

170.    Defendant violated the FLSA requirement that to keep accurate payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq.*

**COUNT II**
**RULE 23 SOUTH CAROLINA CLASS ACTION**
**VIOLATIONS OF THE SOUTH CAROLINA PAYMENT OF WAGES ACT, S.C. CODE**
**ANN. §§ 41-10-10, *et seq.* ("SOUTH CAROLINA WAGE ACT")**

171.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

172.     The South Carolina Wage Payment of Wages Act, S.C. Code Ann. §§ 41-10-10, *et seq.* provides that "[e]very employer in the State shall pay all wages due in lawful United States money or by negotiable warrant or check bearing even date with the payday." S.C. Code Ann. § 41-10-40(A).

173.     Pursuant to S.C. Code Ann. § 41-10-80(C), an employee who has not been paid in accordance with the South Carolina Payment of Wages Act "may recover in a civil action an amount equal to three times the full amount of the unpaid wages, plus costs and reasonable attorney's fees as the court may allow."

174.     At all times relevant to the action, Defendant was an employer covered by the overtime and wage mandates of the South Carolina Wage Act, and Plaintiff Fowler and the members of the Rule 23 South Carolina Class are employees entitled to the Act's protections.

175.     The South Carolina Wage Act entitles employees to compensation for every hour worked in a workweek.

176.     The South Carolina Wage Act entitles employees to overtime compensation at a rate equal to one and one-half the amount of their regular rate of pay for all hours worked in excess of forty (40) hours per week.

177.     Defendant violated the South Carolina Wage Act by regularly and repeatedly failing to compensate the members Rule 23 South Carolina Class for the time spent on the work activities described in this Complaint.

178.     Defendant's uniform policy and practice, as described above, left it without any bona fide dispute as to why it failed to pay the members of the Rule 23 South Carolina Class for all time worked.

179.    As a result, the members of Rule 23 South Carolina Class have and will continue to suffer loss of income and other damages.  Accordingly, the members of the Rule 23 South Carolina Class are entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under the South Carolina Wage Act at an amount to be proven at trial.

**COUNT III**
**RULE 23 CLASS ACTION**
**VIOLATIONS OF THE NORTH CAROLINA WAGE AND HOUR ACT,**
**N.C. GEN. STAT. 95-25.1, *et seq.* ("NORTH CAROLINA WAGE ACT")**

180.    Plaintiffs re-allege and incorporate all previous paragraphs herein and further allege as follows.

181.    At all times relevant to this action, Defendant was an employer covered by the overtime mandates of the North Carolina Wage and Hour Act, N.C. Gen. Stat. §§ 95-25.1, *et seq.*, and Plaintiff Watson and the Rule 23 North Carolina Class members were or are employees entitled to the Act's protections.

182.    The North Carolina Wage Act entitles employees to compensation for every hour worked in a workweek. N.C.G.S. § 95-25.3.

183.    The North Carolina Wage Act entitles employees to overtime compensation "not less than time and one-half of the regular rate of pay of the employee for those hours worked in excess of 40 hours per week." N.C.G.S.A. § 95-25.4.

184.    Defendant violated the North Carolina Wage Act by regularly and repeatedly failing to compensate Plaintiff and the members of the Rule 23 North Carolina Class for the time spent on the work activities described in this Complaint.

185.    As a result, Plaintiff Watson and the members of the Rule 23 North Carolina Class have and will continue to suffer loss of income and other damages.

186.     Accordingly, Plaintiff Watson and the members of the Rule 23 North Carolina Class are entitled to recover unpaid wages owed, plus costs and attorneys' fees, and any other appropriate relief at an amount to be proven at trial. N.C.G.S.A. § 95-25.22.

**COUNT IV**
**RULE 23 CLASS ACTION**
**VIOLATIONS OF THE MASSACHUSETTS MINUMUM FAIR WAGES ACT,**
**M.G.L. CH 151, §1A and §1B ("MASSACHUSETTS OVERTIME ACT")**

187.     Plaintiffs re-allege and incorporate all previous paragraphs herein and further allege as follows.

188.     Pursuant to the Massachusetts Overtime Act and governing regulations, employers must compensate employees for hours worked in excess of forty in a workweek at a rate not less than one and one half times their regular rate of pay. M.G.L. ch. 151 §1A; 454 CMR §27.03(3).

189.     For purposes of calculating hours worked, the Massachusetts Department of Labor's regulation 454 CMR § 27.02 defines "working time" to include "all time during which an employee is required to be on the employer's premises or to be on duty, or to be at the prescribed work site or at any other location, and any time worked before or after the end of the normal shift to complete the work." 454 CMR § 27.02.

190.     An employee whose wages has not been paid as required by the Massachusetts Overtime Act may bring "a civil action for injunctive relief, for any damages incurred, and for the full amount of the overtime rate of compensation less any amount actually paid to him by the employer." An employee "who prevails in such an action shall be awarded treble damages, as liquidated damages, for lost overtime compensation and shall also be awarded the costs of the litigation and reasonable attorneys' fees. M.G.L. Ch. 151 §1B.

191.    At all times relevant to this action, Defendant was an employer covered by the Massachusetts Overtime Act and Plaintiff Ortega and the members the Rule 23 Massachusetts Class are employees engaged in an occupation entitled to the Massachusetts Overtime Act's protections.

192.    The Massachusetts Overtime Act entitles non-exempt employees to overtime compensation for every hour worked in excess of forty (40) in a workweek.

193.    Defendant violated the Massachusetts Overtime Act by regularly and repeatedly failing to pay overtime to the members of the Rule 23 Massachusetts Class for hours worked in excess of forty (4) in a workweek.

194.    Defendant's uniform policy and practice, as described above, was/is willful, intentional, unreasonable, arbitrary, and in bad faith.

195.    As a result, the members of the Rule 23 Massachusetts Class have and will continue to suffer loss of income and other damages. Accordingly, the members Rule 23 Massachusetts Class are entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under the Massachusetts Overtime Act at an amount to be proven at trial.

**COUNT V**
**RULE 23 CLASS ACTION**
**VIOLATIONS OF THE MASSACHUSETTS TIMELY PAYMENT OF WAGES ACT**
**(MG.L. CH. 149 §148)**

196.    Plaintiffs re-allege and incorporate all previous paragraphs herein and further allege as follows.

197.    Defendant is an employer within the meaning of the Massachusetts Timely Payment of Wages Act.

198.     Plaintiff Ortega and the members of the Rule 23 Massachusetts Class were or are employees engaged in an occupation within the meaning of the Massachusetts Timely Payment of Wages Act.

199.     The Massachusetts Timely Payment of Wages Act required Defendant to pay Plaintiff Ortega and the Rule 23 Massachusetts Class members all wages they were owed, at the correct rate, within a certain time period.

200.     Defendant violated this requirement by not paying wages earned by Plaintiff Ortega and the Rule 23 Massachusetts Class members at the appropriate rate and time.

201.     As a result, Plaintiff Ortega and the Rule 23 Massachusetts Class members are entitled to damages authorized by law, including lost wages, treble damages, attorneys' fees, interest, and costs.

202.     The Massachusetts Attorney General Office's Fair Labor Division has authorized Plaintiff Ortega to initiate this action.

### COUNT VI
### RULE 23 NATIONWIDE CLASS ACTION
### NATIONWIDE BREACH OF CONTRACT

203.     Plaintiffs re-allege and incorporate all previous paragraphs herein and further allege as follows.

204.     At all times relevant to this action, Defendant had binding and valid contracts with Plaintiffs and every other Rule 23 Nationwide Class member to pay each employee for the hours they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiffs and the Rule 23 Nationwide Class members performed on behalf of Defendant.

205.    Each Rule 23 Nationwide Class member's contractual hourly rate is identified in paystubs and other records that Defendant prepares and maintains as part of its regular business activities.

206.    For example, Defendant offered to compensate Plaintiffs at their respective hourly rates if they agreed to perform services for Defendant as an Agent. Plaintiffs accepted Defendant's offer and performed their duties as Agents in reliance on the offer.

207.    Defendant breached its contractual promises by failing to pay Agents at their fixed, pre-agreed upon hourly rate for all of the hours worked.

208.    Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiffs, was contractually entitled to a minimum hourly rate of approximately $17.00-20.50 per hour within the applicable period.

209.    Plaintiffs and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises contained in Defendant's offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre-, mid-, and post-shift work and technical downtime described herein.

210.    By not paying Plaintiffs and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work described herein, Defendant systematically breached its contracts with Plaintiffs and each member of the Rule 23 Nationwide Class.

211.    Defendant can easily ascertain the amount of damages owed to Plaintiffs and the Rule 23 Nationwide Class members based on the allegations made in this complaint (specifically the amount of off-the-clock work claimed each shift) in conjunction with Defendant's payroll

records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

212.     Plaintiffs and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (i.e., pure "gap time" claims) and to the extent the limitations periods differ.

213.     Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiffs and other Rule 23 Nationwide Class members spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

214.     As a direct and proximate result of Defendant's contractual breaches, Plaintiffs and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

**COUNT VII**
**RULE 23 NATIONWIDE CLASS ACTION**
**NATIONWIDE UNJUST ENRICHMENT**

215.     Plaintiffs re-allege and incorporate all previous paragraphs herein.

216.     This Count is pled in the alternative to Count VI, supra, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

217.     At all times relevant to this action, Defendant promised Plaintiffs and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiffs and the Rule 23 Nationwide Class members performed for the benefit of Defendant.

218.     Plaintiffs and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

219.    By not paying Plaintiffs and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

220.    Plaintiffs and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

221.    Defendant received and accepted the above-referenced off-the-clock work services from Plaintiffs and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

222.    Defendant has been unjustly enriched by the retention of monies received pursuant to the services Plaintiffs and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiffs and the Rule 23 Nationwide Class for the same.

223.    Plaintiffs and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiffs and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

224.    As a direct and proximate result of Defendant's actions, Plaintiffs and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

WHEREFORE, Plaintiffs request the following relief:

a.    An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.    An Order certifying this action as a class action (for the Rule 23 South Carolina Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff Fowler's claim under the South Carolina Wage Act (Count II);

c.    An Order certifying this action as a class action (for the Rule 23 North Carolina Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff Watson's claim

under the North Carolina Wage Act (Count III);

d.      An Order certifying this action as a class action (for the Rule 23 Massachusetts Class) pursuant to Rule 23 (b)(2) and (b)(3) with respect to Plaintiff Ortega's claims under The Massachusetts Overtime Act and Massachusetts Timely Payment of Wages Act (Counts IV and V);

e.      An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' breach of contract claim (Count VI);

f.      An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' unjust enrichment claim (Count VII);

g.      An Order compelling Defendant to disclose in computer format, or in print if no computer-readable format is available, the names, addresses and e-mails of all proposed FLSA Collective members and Rule 23 Nationwide Class members, and authorizing Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class and collective members of their rights by law to join and participate in this lawsuit;

h.      An Order designating Plaintiffs as representatives of the FLSA Collective and the Rule 23 Nationwide Class, and undersigned counsel as Class counsel for the same;

i.      An Order designating Plaintiff Fowler as representative of the Rule 23 South Carolina Class, and undersigned counsel as Class counsel for the same;

j.      An Order designating Plaintiff Watson as representative of the Rule 23 North Carolina Class, and undersigned counsel as Class counsel for the same;

k.      An Order designating Plaintiff Ortega as representative of the Rule 23 Massachusetts Class, and undersigned counsel as Class counsel for the same;

l.      An Order declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

m.      An Order declaring Defendant's violations of the FLSA were willful;

n.      An Order declaring Defendant violated the state wage and hour laws/acts of the states of South Carolina, North Carolina and Massachusetts as cited herein;

o.      An Order declaring Defendant had no bona fide dispute as to its violations of the referenced state wage and hour laws;

p.      An Order declaring Defendant breached its contracts with Plaintiffs and the members of the Rule 23 Nationwide Class by failing to pay them for each hour they

worked at a pre-established (contractual) regularly hourly rate;

q.    An Order declaring Defendant was unjustly enriched by the off-the-clock work performed by Plaintiffs and the members of the Rule 23 Nationwide Class;

r.    An Order granting judgment in favor of Plaintiffs and against Defendant and awarding Plaintiffs, the FLSA Collective, and the Rule 23 Classes the full amount of damages and liquidated damages available by law;

s.    An Order awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action as provided by statute;

t.    An Order awarding pre- and post-judgment interest to Plaintiffs on these damages; and

u.    An Order awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiffs, individually and on behalf of all others similarly situated, by and through their attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled case.

Dated: January 29, 2024                          Respectfully Submitted,

Benjamin Knox Steffans (BBO #568535)
Steffans Legal, PLC
10 Wendell Ave. Ext. Suite 208
Pittsfield, Massachusetts, 01201
Telephone: 413-418-4176
bsteffans@steffanslegal.com

Kevin J. Stoops*
Paulina R. Kennedy*
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Telephone: 248-355-0300
kstoops@sommerspc.com
pkennedy@sommerspc.com

*Pro hac vice application forthcoming

Counsel for Plaintiff, the FLSA Collective and the putative Class